16-1145

## IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

THE SERVICING COMPANY, LLC, *et al.*,

*Appellant,*

v.

ANGELA PETTUS, *et al.*

*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
CASE NO. 3:15-cv-479-HEH/DJN

## APPELLANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL

David G. Barger
Michael R. Sklaire
Thomas J. McKee, Jr.
GREENBERG TRAURIG LLP
1750 Tysons Blvd., Suite 1000
Mclean, VA 22102
(703) 749-1300

Counsel for Appellants

## **TABLE OF CONTENTS**

PROCEDURAL AND FACTUAL BACKGROUND ...............................................3

ARGUMENT ........................................................................................................5

    I.    The Standard for a Stay ................................................................5

    II.   This Court Has Appellate Jurisdiction Because the Order is
          Immediately Appealable. ...........................................................6

    III.   TSC has a Strong Likelihood of Prevailing on Appeal........................8

          a.    There Is No Dispute that Island Financial Has Sovereign
                Immunity as an Arm of the Tribe. ...............................8

          b.    TSC has Standing to Raise the Tribal Immunity Issue................9

          c.    Ms. Fox, an Officer of the Tribe, May Not Be Required
                to Testify. ...................................................15

    IV.   The Balance of Harms Favors a Stay. ................................................18

    V.    Public Interest Favors A Stay. ..........................................................20

CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Gold Country Casino*,
    464 F.3d 1044 (9th Cir. 2006) ...............................................................8

*Alltel Communications, LLC v. DeJordy*,
    675 F.3d 1100 (8th Cir. 2012) .........................................................6, 13

*Bonnet v. Harvest (U.S.) Holdings, Inc.*,
    741 F.3d 1155 (10th Cir. 2014) .............................................6, 9, 13, 14

*Bynon v. Mansfield*,
    No. 15-00206, 2015 WL 2447159 (E.D. Pa. 2015).....................16, 17

*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*,
    532 U.S. 411 (2001)...........................................................................14

*Cash Advance & Preferred Cash Loans v. State*,
    242 P.3d 1099 (Colo. 2010).................................................13, 15, 16

*Cavel Int'l, Inc. v. Madigan*,
    500 F.3d 544 (7th Cir. 2007) .................................................................5

*Cohen v. Beneficial Industrial Loan Corp.*,
    337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) ..........................5

*COMSAT Corp. v. Nat'l Sci. Found.*,
    190 F.3d 269 (4th Cir. 1999) ...............................................................13

*Crowe & Dunlevy, P.C. v. Stidham*,
    640 F.3d 1140 (10th Cir. 2011) .............................................................13

*Dillon v. BMO Harris Bank*,
    No. 16-mc-5-CVE-TLW (Feb. 4, 2016)..............................................10

*Frelich v. Upper Chesapeake Health, Inc.*,
    313 F.3d 205 (4th Cir. 2002) ...............................................................10

*Grand Canyon Skywalk Dev. LLC v. Cieslak*,
    No. 2:13-CV-00596-JAD, 2015 WL 4773585 (D. Nev. Aug. 13, 2015)..........13

*Hilton v. Braunskill,*
481 U.S. 770 (1987)...........................................................................4

*IGT v. Hardy,*
2011 U.S. Dist. LEXIS 90852 (M.D. Ala. Aug. 15, 2011) ...................9, 11, 12

*Long v. Robinson,*
432 F.2d 977 (4th Cir. 1970) ...........................................................5

*Michigan v. Bay Mills Indian Community,*
134 S.Ct. 2024 (2014)......................................................................7

*Native American Distrib. v. Seneca–Cayuga Tobacco Co.,*
546 F.3d 1288 (10th Cir. 2008) ........................................................8

*Nken v. Holder,*
556 U.S. 418 (2009)..........................................................................4

*Peterson v. Islamic Republic of Iran,*
627 F.3d 1117 (9th Cir. 2010) ..........................................................9

*Powers v. Ohio,*
499 U.S. 400 (1991)........................................................................10

*Rolling Frito-Lay Sales LP v. Stover,*
2012 WL 252938 (D. Ariz. Jan. 26, 2012) .......................................13

*Round Valley Nation v. California,*
2000 WL 1810211 (N.D. Cal. Dec. 8, 2000).................................10, 11

*Shenandoah v. U.S. Dep't of the Interior,*
1997 WL 214947 (N.D.N.Y. Apr. 14, 1997).....................................11

*Sledge v. J.P. Stevens & Co., Inc.,* 1976 WL 3791 (4th Cir. 1988) .........................6

*Under Seal v. Under Seal,*
326 F.3d 479 (4th Cir. 2003) ...........................................................5

*United States v. Jones,*
225 F.3d 468 (4th Cir. 2000) ..........................................................12

*Walters v. Indus. & Commercial Bank of China, Ltd.,*
651 F.3d 280 (2d Cir. 2011) .............................................................9

iii

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977)..............................................................5

**Statutes**

15 U.S.C. §1681b(f) ...........................................................................2

15 U.S.C. § 1691(d) ...........................................................................2

Appellant/Defendant The Servicing Company, LLC ("TSC"), pursuant to Federal Rule of Appellate Procedure 8, moves the Court to stay the Order of the District Court entered February 10, 2016, requiring TSC to produce by tomorrow, February 12, 2016, certain records of a sovereign Indian tribe's business protected by sovereign immunity, until this Court may consider and rule on the appeal of that Order. The District Court also ordered a Tribal official, Michelle Fox, who resides on tribal land more than 2,000 miles away in rural north central Montana, to appear on March 2, 2016, and give testimony on the issue of whether she, as a Tribal official, is protected by sovereign immunity from providing a deposition in this case. The District Court ordered that testimony, *sua sponte* and without any process or citation to any authority, even though Ms. Fox is not a party to the case, and has not been served with any subpoena or any other process subjecting her to the jurisdiction of the District Court. The District Court is, respectfully, without jurisdiction to have ordered this extraordinary non-party testimony.

With regard to the protected documents, these documents are owned by Island Finance, LLC ("Island Finance"), a finance company, wholly owned by the Fort Belknap Indian Community (the "Tribe"), [1] and operated from the Tribe's reservation, where approximately 90 Tribal citizens are employed in connection

---

[1] The Tribe is a federally-recognized sovereign American Indian tribe. 81 FED. REG. 5019, 5021 (Jan. 29, 2016) (periodic listing of tribes with government-to-government relationship with the United States).

with the Tribe's lending business. The Tribe, and its economic arm (Island Finance), and its officials acting with the scope of their duties, enjoy sovereign immunity, and are protected from suit, which includes any judicial process.

Plaintiffs in this case, consumers potentially seeking loans, did not sue Island Finance. Indeed, their Complaint does not even mention Island Finance. Instead, Plaintiffs sued TSC and have served document requests on TSC, seeking Island Finance's protected documents, requesting that TSC use its access to Island Finance's electronic systems (via password) to deliver Island Finance's customer information, financial records and correspondence to Plaintiffs. In short, Plaintiffs' lawsuit is entirely pretextual and aimed at Island Finance. TSC has an exclusive agency relationship with Island Finance and objected to the production of Island Finance's documents on the grounds of Island Finance's sovereign immunity. The District Court overruled the objection, asserting that TSC does not have standing to invoke Island Finance's sovereign immunity. Whether TSC can, as an exclusive agent, seek to protect Island Finance's documents on the grounds of sovereign immunity appears to be an issue of first impression in this Circuit. Defendant's position is that where, as here, documents and witnesses are clearly shielded by sovereign immunity, the identity of the entity that raises the problem is of no moment. Sovereign immunity is jurisdictional, and the District Court has no jurisdiction to allow Plaintiffs' collateral attack on Island Finance.

## PROCEDURAL AND FACTUAL BACKGROUND

This case arises from the Plaintiffs' attempt to each obtain short-term loans by submitting their personal information on websites owned by various unrelated third-parties and, upon information and belief in accordance with standard industry practice, receiving a disclosure from such website and agreeing that their information would be viewable and sent to various lenders and agents for lenders who might access their credit data. Despite such knowing consent, the Plaintiffs originally filed a complaint that consisted of two claims. Following the District Court's ruling dismissing the Plaintiffs' claims under the Equal Credit Opportunity Act (specifically, for violating 15 U.S.C. § 1691(d)), the sole remaining claim is for alleged violations of the Fair Credit Reporting Act (the "FCRA"). For that claim, Plaintiffs allege that TSC violated 15 U.S.C. §1681b(f) of the Fair Credit Reporting Act by purportedly obtaining each of the Plaintiffs' "consumer reports" from Clarity Services ("Clarity") without a "permissible purpose."

TSC is not a lender. Nor does TSC resell loans. *See* Declaration of The Servicing Company, LLC, ECF 32-1, ¶ 3. Nor did TSC sell Plaintiffs' consumer data, or any other consumer's data, to any entity. *Id*., ¶¶ 5, 14. Instead, TSC is an agent for Island Finance that provides, pursuant to an exclusive contract, services solely for Island Finance (a sovereign economic arm of the Fort Belknap Indian

3

Community) (the "Tribe") and for no other entity.  *Id*. at ¶ 4; *see also* Declaration of M. Fox, ECF 32-2, ¶ 7 and Declaration of M. Azure, ECF 32-4, ¶ 5.

The Tribe wholly owns and operates Island Finance, a lending company, which is an economic arm, an extension of the Tribal government itself.  The Tribe employs approximately 90 Tribe citizens on its reservation in connection with its lending business.  The employment of those individuals in turn benefits approximately 9 other Tribe members per employee (9 x 90 = 810).  In an area sorely lacking in resources and other economic opportunities, this business is vital to the Tribe and its members.  *See* Dec. of M. Azure, ECF 32-4, ¶ 13.  TSC is an exclusive agent for Island Finance.

When TSC objected to Plaintiffs' discovery requests, Plaintiffs sought to compel certain documents from TSC that are the property of its exclusive principal, Island Finance.  Plaintiffs also sought to compel the deposition of Michelle Fox, the CEO of Island Finance as an agent of TSC under Federal Rule of Civil Procedure 30.  *See* ECF 30.  Defendants objected to this discovery because the documents and deposition it sought were barred by the sovereign immunity of Island Finance and Ms. Fox.  *See* ECF 32.

After briefing and a hearing on the issues on Tuesday, February 9, 2016, the Magistrate Judge ordered (1) that TSC lacked standing to assert tribal sovereign immunity on Island Finance's behalf; (2) that Ms. Fox appear in Court on an

evidentiary hearing as to why sovereign immunity should apply to her and bar her deposition; and (3) that TSC must produce the documents identified in the Motion to Compel over which Defendants had asserted sovereign immunity by Friday, February 12, 2016. *See* ECF 58 (Memorandum Order by Magistrate Judge Novak).

TSC objected to the Order in its entirety, and appealed the ruling to the District Judge. On Wednesday, February 10, 2016, at the conclusion of a hearing, the District Judge affirmed the Magistrate Judge's Order. ECF 65.

Defendants orally moved for the District Court to stay its ruling, or to extend the deadline for compliance so that this Court could consider and decide this appeal. The District Court denied that motion. ECF 65. The requirements of F.R.A.P. 8(a)(2) thus have been satisfied.

## **ARGUMENT**

### I.    **The Standard for a Stay**.

The Supreme Court recognizes that the appellate process can be lengthy, and that in some cases the ultimate decision may come too late for the party seeking review. *See Nken v. Holder*, 556 U.S. 418, 421 (2009). Accordingly, appellate courts are authorized to stay execution of a district court's order so that the appellate court has the time necessary to review the underlying decision. *Id.*; *see also* Fed. R. App. P. 8. In order to obtain a stay pending an appeal, the moving party must demonstrate: (i) a strong showing of success on the merits; (ii)

5

irreparable injury absent the relief; (iii) the stay will not substantially injure the other party; and (iv) the stay is in the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). The foregoing test is applied using a "sliding scale" approach, such that a stay should generally issue if there is great harm to the appellant, whether or not appellant can show a probability of success on appeal. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 546-47 (7th Cir. 2007). In this regard, as long as appellant has raised a serious legal issue, a stay is appropriate when denying the same would inflict great harm on the movant. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977); *see also Sledge v. J.P. Stevens & Co., Inc.*, 1976 WL 3791 (4th Cir. 1988).

## II.   This Court Has Appellate Jurisdiction Because the Order is Immediately Appealable.

Under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), non-final orders are reviewable by courts of appeals if they meet certain criteria. This Circuit requires that an order must meet three criteria in order to qualify as collateral, and therefore reviewable. *Under Seal v. Under Seal*, 326 F.3d 479, 483 (4th Cir. 2003). Those three criteria are that "the order must (1) conclusively determine the question, (2) resolve an important question independent of the merits, (3) be effectively unreviewable on appeal from final judgment." *Id*. at 481.

This Court does not appear to have considered the specific question of whether rulings on objections to discovery based on tribal immunity are reviewable as collateral orders. The Circuits that have addressed that question, however, have found that such orders are collateral orders and therefore reviewable before the conclusion of the case.

In *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155 (10th Cir. 2014), the Tenth Circuit examined the issue at length, applying the same three factors that are to be applied under this Circuit's test. *Id*. at 1157. In that case, the Tribe sought to quash a subpoena to it. The court first noted that tribal immunity is jurisdictional. *Id*. at 1158. It then explained that each of the three collateral order factors were met because (1) the denial of the motion to quash conclusively determined the issue of tribal immunity, (2) "tribal immunity [was] an important issue completely separate from the merits" of the case, and (3) "the denial of tribal immunity [was] effectively unreviewable on appeal from a final judgment because, if the Tribe is entitled to immunity from a particular judicial process, this immunity is effectively lost as soon as the Tribe is subjected to that process." *Id*. The court thus concluded that the order denying the motion to quash the subpoena to the tribe was reviewable as a collateral order.

The Eighth Circuit reached the same conclusion in *Alltel Communications, LLC v. DeJordy*, but without discussion. 675 F.3d 1100, 1102 (8th Cir. 2012).

The result in this case is the same, although it presents a slightly different procedural posture as there is no subpoena directly to the Tribe, to Island Finance, or Ms. Fox.  Nonetheless, by requiring production of documents belonging to Island Finance, and by requiring a Tribal official to appear in court, the Order concludes that tribal immunity does not prevent the discovery sought, the issue of tribal immunity is wholly separate from the merits, and the order effectively will be unreviewable on final judgment because Island Finance already will have had its documents produced and a Tribal official will have been subjected to the judicial process.  The Order thus is appealable under the collateral order doctrine.

### III.    TSC has a Strong Likelihood of Prevailing on Appeal.

The District Court's Order presents two different issues for appeal:  (1) whether TSC has standing to assert the Tribe's immunity; and (2) whether the Magistrate Judge may, *sua sponte*, compel a non-party representative of the Tribe who resides on Tribal land in Montana to make a 4,200-mile round-trip over at least four days to appear in court in Virginia.[2]

#### a.    There Is No Dispute that Island Financial Has Sovereign Immunity as an Arm of the Tribe.

By way of background, "Indian tribes have immunity even when a suit arises from off-reservation commercial activity."  *Michigan v. Bay Mills Indian*

---

[2] This motion is addressed to the additional issue of the timing of production and Ms. Fox's appearance (if required).  Specifically, it seeks relief from the requirement of production by February 12, and, for Ms. Fox to appear on March 2.

*Community*, 134 S.Ct. 2024, 2028 (2014).  This broad reach of tribal sovereign immunity extends to corporate subsidiaries of tribes.  "When the tribe establishes an entity to conduct certain activities, the entity is immune if it functions as an arm of the tribe."  *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006).  "Tribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities."  *Native American Distrib. v. Seneca– Cayuga Tobacco Co.*, 546 F.3d 1288, 1292 (10th Cir. 2008).  There is no dispute that "Island Finance . . . falls under the umbrella of the tribal immunity." Transcript of Hearing, Feb. 8, 2016 ("Transcript") at 1.  .

### b.    TSC has Standing to Raise the Tribal Immunity Issue.

First, TSC has standing to raise the issue of tribal immunity as the exclusive agent of Island Finance.  To be clear, TSC is not asserting that tribal immunity covers TSC, only that tribal immunity prevents TSC from producing <u>Island Finance's documents</u>.  TSC has clear agency and contractual obligations to maintain the confidentiality of Island Finance's documents, and has no authority to waive the sovereign immunity of the Tribe or Island Finance, and these binding obligations are sufficient to create a legally protected interest[3].

---

[3] These legal obligations are formalized in Paragraphs 4, 5, 7.6, 14 and 20 of the Servicing Agreement between Island Finance and TSC dated September 21, 2011, which has been produced to defendants and is subject to a pending motion to file under seal.  Likewise, evidence of the Tribe's express intent that Island Finance

9

Second, even in the absence of this contractual obligation, sovereign immunity is a jurisdictional defense and may asserted by any party or raised *sua sponte* by the court. *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 290 (2d Cir. 2011); *Bonnet*, 741 F.3d at 1158 (noting that "[t]he issue of tribal immunity is indeed jurisdictional"). "In any event, the general rule against third-party standing is a 'judicially self-imposed' and 'prudential' limitation, rather than a constitutional one." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127 (9th Cir. 2010) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

The Order and Plaintiffs inaccurately attempt to equate TSC's raising the issue of tribal immunity in this case to non-sovereign immunity cases, where parties seeking to assert claims on behalf of a non-appearing third party must "demonstrate a hindrance to the third party's ability to protect its own interests." Order at 5 (citing *Frelich v. Upper Chesapeake Health, Inc.,* 313 F.3d 205, 215 (4th Cir. 2002) (citing *Powers v. Ohio,* 499 U.S. 400, 410-12 (1991)). Such an analysis is not required, when a party raises sovereign immunity in a matter in which the tribal holder of the immunity is not present. *See, e.g.*, *IGT v. Hardy*, 2011 U.S. Dist. LEXIS 90852 (M.D. Ala. 2011). The cases cited in the Order are readily distinguishable. In *Frelich,* a doctor was seeking to bring an ADA claim on behalf of patients. 313 F.3d at 215. In *Powers,* a criminal defendant was

---

and its "managers, officers, employees and agents" be protected by the Tribe's immunity is already in the record. [Docket No. 16-1, Ex. 1 at ¶ 7].

seeking to bring a claim on behalf of one of the jurors. 499 U.S. at 410. Neither of those cases involved the threshold jurisdictional question of immunity.

Just recently, a United States District Court in Oklahoma addressed nearly identical third-party discovery issues, and quashed a subpoena served upon a tribal official who had authored declarations in support of defendants in a class action against service-providers rendering services to online tribal lending enterprises. *Dillon v. BMO Harris Bank*, No. 16-mc-5-CVE-TLW (Feb. 4, 2016) (appended to ECF 48). In that case, where plaintiffs sued third party banks providing financial services to a tribal entity, the court quashed a subpoena directed at a tribal officer who had filed declarations describing the tribe's relationship with the business. *Id*.

The only difference between that Oklahoma case and this case is that this case actually permits a more compelling argument to reverse the Order. Unlike *Dillon,* Plaintiffs in this case have never served Ms. Fox with any subpoena, nor have Plaintiffs even attempted to subpoena information from Island Finance. *See also Round Valley Nation v. California*, 2000 WL 1810211 (N.D. Cal. Dec. 8, 2000);[4] *Shenandoah v. U.S. Dep't of the Interior*, 1997 WL 214947 (N.D.N.Y.

---

[4] In *Round Valley*, the plaintiff, a discredited faction alleging they were an Indian tribe's proper governing body, sued state and federal authorities and a private bank alleging various harms, including their complaint that the bank was rendering services to an Indian tribe. The tribe did not intervene or participate in the case, but the bank and other defendants raised sovereign immunity as a defense and prevailed upon that theory, with the court finding that the bank's cessation of services would prejudice the tribe's interests. 2000 WL 1810211.

Apr. 14, 1997).[5]  There is no properly served legal instrument for Island Finance to move to quash, as noted in the Order.  Order at 6, n.3.  Counsel for Island Finance is not authorized to accept service, and will not accept service without such authorization.  It is not an uncommon occurrence that third-parties raise, and prevail, upon tribal sovereign immunity as grounds for dismissal for lack of jurisdiction.  *See, e.g.*, *IGT*, 2011 U.S. Dist. LEXIS 90852.  Nor is it of any moment that Island Finance has been unwilling to submit itself to what it views as an overbroad exception to sovereign immunity.

In *IGT*, plaintiff filed a class action alleging that the class lost over $5,000,000 playing electronic bingo at casinos owned by an Indian tribe.  The plaintiff did not name the tribe as a defendant, "presumably due to its sovereign immunity." *Id*. at *4.  Instead, trying to circumvent tribal sovereign immunity, the plaintiff only sued manufacturers of the electronic bingo machines which facilitated the gambling activities.  The tribe conducting the gaming, never appeared in the case.  All the defendant manufacturers argued the tribe's immunity and prevailed.  The court found that a determination of whether the tribal gaming

---

[5] In *Shenandoah*, a faction purporting to represent a 'traditional' body of tribal government sued the Department of the Interior for recognizing others as the proper governing body of the tribe and sued Key Bank for making a loan to the tribe.  The tribe did not participate in the litigation, but Key Bank raised and prevailed upon the sovereign immunity defense, with the court holding that the tribe was indispensable to any question about the legality of the bank's services rendered to the tribal gaming enterprise.  1997 WL 214947.

violated state or federal law would severely impact the tribe's wholly owned casino enterprise and the plaintiff could not make an end run around tribal sovereign immunity by suing the manufacturers. *Id.*

These cases flow from common sense: if sovereign immunity is jurisdictional (as it plainly is in the Fourth Circuit – *see, e.g.*, *United States v. Jones*, 225 F.3d 468, 469 (4th Cir. 2000) ("Sovereign immunity deprives a court of jurisdiction")), then any party, and the Court itself may raise the issue *sua sponte*. Requiring sovereign interests to first suffer the loss of the very right they seek to enforce – to be free from unconsented court process – by being hailed into Court to provide documents and testimony to prove up their sovereign immunity, defies common sense. Ms. Fox's personal appearance to assert sovereign immunity is not a jurisdictional prerequisite for the Court's consideration of the uncontroverted evidence of sovereign immunity already in the record. Fourth Circuit law does not require a party to suffer the loss of the very federal right it seeks to protect. If the Order is affirmed, this Court would endorse a new rule: that to *exercise* its federal right to avoid wrongful court proceedings, a Tribal official *must first suffer the loss* of this right by appearing in a federal court thousands of miles away to demonstrate why she does not have to appear in a federal court thousands of miles away. This turns federal court presumptions about vindication of federal rights on its head. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir.

13

2011); *Rolling Frito-Lay Sales LP v. Stover*, 2012 WL 252938, *6 (D. Ariz. Jan. 26, 2012) ("public interest is not advanced by having a court that lacks jurisdiction determine a party's legal rights").

The Magistrate Judge's Order asserts that there is a distinction between lawsuits and discovery (typically third-party subpoenas) with respect to tribal or sovereign immunity. Memorandum Order, ECF 58, at 5. The law, however, does not recognize any such distinction. *See Bonnet*, 741 F.3d at 1160-61 (holding that a tribe is immune from all judicial process, whether a traditional suit or a subpoena); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) ("[S]ubpoena proceedings fall within the protection of sovereign immunity") (*quoting Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989)). *See also Alltel Communications, LLC v. DeJordy*, 675 F.3d 1100, 1103-05 (8th Cir. 2012) (relying on *COMSAT Corp.*); *Grand Canyon Skywalk Dev. LLC v. Cieslak*, No. 2:13-CV-00596-JAD, 2015 WL 4773585, at *3 (D. Nev. Aug. 13, 2015); *Cash Advance & Preferred Cash Loans v. State*, 242 P.3d 1099 (Colo. 2010) (applying this principle to a subpoena served on a tribal consumer lending entity). Sovereign or tribal immunity bars all legal proceedings, all "judicial process." *Bonnet*, 741 F.3d at 1159, 1160-1161. That bar includes discovery subpoenas. *Id.*; *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001).

14

The assertion that TSC lacks standing to raise tribal immunity in this case is particularly troubling because it serves to aid Plaintiffs in circumventing tribal immunity. Plaintiffs cannot obtain discovery from Island Finance by suing it directly, or by issuing a subpoena to it. Instead, what they are attempting to do is to obtain discovery from Island Finance through TSC by demanding that TSC produce Island Finance's documents. It is disingenuous for Plaintiffs to try this back-door method of getting to Island Finance's information, then complaining that TSC lacks standing to object to producing documents that tribal immunity places beyond the reach of Plaintiffs or the District Court.

Indeed, if TSC cannot raise the issue of tribal immunity, then who can? Plaintiffs and the Magistrate Judge would seem to require the Tribe to appear itself to assert its immunity. In other words, they wish to have the Tribe do expressly what tribal immunity says it need not do—become involved in this lawsuit. There is no legal basis for that result.

TSC thus has raised a substantial issue as to whether the District Court's rulings on standing are erroneous, and is likely to prevail on that issue on appeal.

### c.    Ms. Fox, an Officer of the Tribe, May Not Be Required to Testify.

The command that Ms. Fox appear to testify is erroneous for several reasons. Plaintiffs attempted to secure Ms. Fox's deposition by serving a notice under Rule 30(b)(1) on TSC. Once it became clear Ms. Fox was not an officer of

TSC and not subject to Rule 30, Plaintiffs then sought to issue a third-party subpoena. Plaintiffs have not attempted to serve Ms. Fox directly but have asked counsel to accept service. TSC's counsel was not authorized to accept such process, and informed counsel and the District Court of that fact.

It is a fundamental tenet of American jurisprudence that before a court may order someone to act, it first must exercise jurisdiction over that person. That is accomplished by service of process. Neither the Plaintiffs nor the Court have served Ms. Fox with any process.

Instead, without any process whatsoever and without citation for any authority to do so, the Magistrate Judge simply ordered her to appear, and directed TSC's counsel to provide Ms. Fox a copy of the Court's order. The efforts to reach Ms. Fox through TSC are not appropriate, and do not suffice to bring Ms. Fox within the District Court's jurisdiction. No law has been cited suggesting otherwise. This end-run through TSC (presumably with as yet unspecified consequences to TSC if Ms. Fox fails to appear) is erroneous.

Even if a subpoena had been issued, the law is well-established that tribal officials are not susceptible to service of such process. In *Cash Advance & Preferred Cash Loans v. State*, for example, the Colorado Supreme Court reversed an order enforcing an investigative subpoena against a tribal lending enterprise because the state had no authority to issue subpoenas to other sovereign

governments. *Cash Advance*, 242 P.3d at 1102. The facts in that case were very similar to those presented here, except that the argument for breaching tribal sovereign immunity in that case was stronger because it involved a government subpoena rather than a private suit. *Id*. The court nevertheless held that "tribal sovereign immunity applies to this state investigative subpoena enforcement action." *Id.* at 1108.

The recent district court opinion in *Bynon v. Mansfield*, No. 15-00206, 2015 WL 2447159 (E.D. Pa. 2015), also applied sovereign immunity to a tribal lending enterprise similar to Island Finance – a title lending company organized under the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians. The court held that the tribe's sovereign immunity "extends to a tribe's subordinate economic entities and to tribal officials who are acting in their official capacity and within the scope of their authority," *id*. at *1, and rejected the plaintiff's attempt to "circumvent" this immunity by suing the individual who managed the company rather than the company itself, *id*. at *2. *Bynon* represents another direct application of these doctrines to facts materially the same as the present litigation, in which Plaintiffs are trying to use Defendants as a proxy for Island Finance.

Even further, if a subpoena had been issued, and somehow had been served lawfully upon Ms. Fox, it could not compel Ms. Fox to do what the order purports to do: require her to travel more than 2,100 miles each way from her home in rural

17

north central Montana to Virginia to testify, a trip that would require at least three days of travel time in addition to the day spent at the hearing. That is far beyond what is permitted by Federal Rule of Civil Procedure 45. That rule provides that a subpoena may only compel a non-party witness to appear (i) within 100 miles of where they reside, are employed, or regularly transact business, or (ii) within the state where they reside, are employed, or regularly transact business if certain conditions are met. Neither prong grants authority to compel a person to travel most of the way across the country to testify at hearing.

## IV.    The Balance of Harms Favors a Stay.

Weighing the second and third factors, the irreparable harm if the stay is not granted and the harm if it is, favor the grant of a stay.

Issuing a stay will not substantially injure Plaintiffs. The only "harm" will be a slight delay in one aspect of the proceedings below – a limited part of discovery – while the Court considers the application of tribal immunity in this case. Plaintiffs are free to proceed with other discovery in the case. Indeed, plaintiffs have not yet even noticed the deposition of TSC, and depositions are taking place this week. Nonetheless, if the Court believes that delay will harm Plaintiffs, then it can set an expedited briefing and argument schedule in order to minimize that delay and any corresponding harm.

On the other hand, denying a stay will irreparably harm defendant TSC and its Tribal principal. Tribal documents and witnesses will have been subject to discovery and the judicial process, despite being immune. There is no way to un-ring that bell.

Moreover the impact on the Tribe is significant. The Tribe generally is impoverished and geographically remote, located in rural north-central Montana. Dec. of M. Fox, ECF 16-1, ¶ 2. It has few of the traditional sources of governmental revenue, such as an adequate tax base. Because of its remote location, the Tribe's revenue from tourism and gaming, which some other tribes use to generate revenue, are limited. *Id*. In recent years, e-commerce has provided the Tribe a new hope for stable revenue. *Id*.

Island Finance is owned by the Tribe and established by the Tribal government. *Id*. ¶ 7. It was formed to fulfill the governmental purpose of promoting the welfare of the Tribe. *Id*. ¶ 8. The money it earns is used to provide essential services, such as police, ambulance, and fire, and to reinvest in the Tribe's other economic efforts. *Id*. ¶ 9. Approximately 90 Tribal citizens are employed on the Reservation by the Tribe's lending operations, including Island Finance. Dec. of M. Azure, ECF 32-4, ¶ 10. The Tribe estimates that each job in its lending business supports nine Tribal citizens, through employees supporting their immediate and extended families. *Id*. ¶ 11. Those citizens typically are not

reliant on the Tribal government for assistance. *Id*., Fox Dec., ECF 16-1, ¶ 11. The Tribe's businesses, including Island Finance, are vital to the Tribe's ability to meet the basic needs of its community. Azure Dec., ECF 32-4 ¶ 13.

The District Court's ruling greatly harms Island Finance and the Tribe. The Tribe's sovereign immunity could be circumvented by the simple guise of a subpoena or discovery request to any non-tribal entity whose services the Tribe might utilize. Not only is the Tribe thus open to the cost and expense of discovery, but to having its Tribal governmental decisions and practices inspected and reviewed. Both of those are what Tribal immunity prohibits.

## V.    **Public Interest Favors A Stay.**

The harmful impact of the District Court's Order on non-parties to this case, specifically the Tribe and its citizens, also tilts the public interest in favor of a stay.

## CONCLUSION

For the reasons stated herein, Defendant The Servicing Company, LLC requests that this court stay the District Court's Order to the extent it requires production of Island Finance's documents, and requiring Michelle Fox to appear to testify, until the Court decides the appeal of that Order.

Respectfully submitted,

_____/s/_____
David G. Barger
GREENBERG TRAURIG, LLP

20

1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Tel.: (703) 749-1380
Fax: (703) 749-1381
*Counsel for The Servicing Company, LLC*

## **LOCAL RULE 27(a) STATEMENT**

Undersigned counsel certifies that he notified opposing counsel of the intent

to file this motion, but that Plaintiffs objected to the same and stated their intent to

file a response in opposition.

_____/s/_____
David Barger
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Tel.: (703) 749-1380
Fax: (703) 749-1381
bargerd@gtlaw.com
*Counsel for The Servicing Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 11, 2016, the foregoing Appellant's Emergency Motion for Stay Pending Appeal was filed electronically with the Clerk of the Court using the CM/ECF system, and that service will thereby be accomplished on:

_____/s/_____
David G. Barger
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Tel.: (703) 749-1380
Fax: (703) 749-1381
bargerd@gtlaw.com

*Counsel for The Servicing Company, LLC*

*DEN 99018906v7*